UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA, :

v. :

DAQUAN MCGRIFF, :

Defendant. :

-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CR-18 (WFK)
21-CR-383 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 19, 2026, Daquan McGriff ("Defendant") pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) in 25-CR-18 ("Count One"); and one count of violating the mandatory conditions of his supervised release by committing a federal, state, or local crime in 21-CR-383 ("Charge Three"). Plea Agreement (the "Plea") ¶ 1, ECF No. 60; Indictment ("Indictment II") ¶ 1, ECF No. 6; Supp. Violation of Supervised Release Report (the "Second VOSR") at 1, 21-CR-383, ECF No. 45.[1] The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to thirty-three (33) months' incarceration to be followed by three (3) years of supervised release with both the standard and special conditions of supervision for Count One; twenty-one (21) months' incarceration for Charge Three to run consecutively to Count One; forfeiture of items identified in the preliminary Order of Forfeiture, ECF No. 62; and a $100.00 mandatory special assessment.

## I. Background

### A. Prior Conviction in 21-CR-383

On July 26, 2020, New York City Police Department (the "NYPD") officers were on patrol in the East Flatbush neighborhood of Brooklyn, New York when they received a radio transmission about a man—later identified as Defendant—in the vicinity who purportedly possessed a firearm. Presentence Investigation Report ("PSR I") ¶¶ 6–7, 21-CR-383, ECF No 22. According to the transmission, a family member of the Defendant called 911 to report he left the home with a firearm in his possession. *Id.* ¶ 6.

[1] Citations are to the docket in *United States v. McGriff*, 25-CR-18. Page pincites refer to the ECF page numbers assigned to a filing where available, and where no ECF heading is present, to the page numbers listed in the original filing. References to the underlying action, *United States v. McGriff*, 21-CR-383 are identified by inclusion of the docket number.

Shortly thereafter, officers observed Defendant who matched the transmission's description. *Id.* ¶ 7. When officers approached Defendant, he backed away and fled on foot. *Id.* Defendant dropped his bag as he fled, which one of the officers described as containing "something heavy in the shape of a firearm[.]" *Id.* The officers pursued and apprehended Defendant, and recovered a loaded, 9 mm Luger semiautomatic pistol. *Id.* ¶ 8.

Upon subsequent review of Defendant's criminal history, Defendant was identified as having been previously convicted of a felony. *See id.* ¶ 9.

On July 21, 2021, a U.S. Grand Jury returned a one-count indictment against Defendant ("Indictment I") charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment I ¶ 1, 21-CR-383, ECF No. 2. On March 23, 2022, Defendant pled guilty to the sole count of Indictment I. Plea Agreement ¶ 1, 21-CR-383, ECF No. 20.

On June 1, 2023, Defendant was sentenced by this Court to forty-one months of incarceration to be followed by three years of supervised release. Mem. and Ord. at 1, 21-CR-383, ECF No. 32.

**B. Preliminary Violations of Supervised Release**

On March 22, 2024, Defendant began his term of supervised release. Violation of Supervised Release Report at 1 (the "First VOSR"), 21-CR-383, ECF No. 39.

On March 28, 2024, less than a week later, Defendant tested positive for marijuana and cocaine. *Id.* at 8. On May 8, 2024, the U.S. Probation Office ("Probation") was notified that Defendant was arrested by the NYPD for criminal possession of crack cocaine with intent to sell. *Id.* at 5–6. After initially denying the allegations, Defendant subsequently admitted to Probation he had possessed crack cocaine on May 8, 2024. *Id.* at 7. Additionally, the First VOSR alleged

Defendant tested positive for marijuana, cocaine, or both, on March 28, April 5, and July 17, 2024. *Id.*

On August 26, 2024, Probation filed the First VOSR based on Defendant's arrest for cocaine possession and his positive drug tests, charging him with: (i) new criminal conduct for criminal possession of a controlled substance (Charge One), and (ii) unlawful use of controlled substances (marijuana and cocaine) (Charge Two). *See id.* at 5–7. The same day, Probation petitioned the Court to issue a summons and revoke Defendant's term of supervised release for Charges One and Two. *See* Petition for Warrant or Summons of Offender at 1–2, 21-CR-383, ECF No. 40. The Court issued an arrest warrant the following day. *See generally* Arrest Warrant, 21-CR-383, ECF No. 41.

**C. Offensive Conduct in 25-CR-18**

At approximately 1:30 A.M. on December 15, 2024, two NYPD officers were flagged down by individuals on a sidewalk while conducting a routine patrol within the Williamsburg neighborhood of Brooklyn, New York. Presentence Investigation Report ("PSR II") ¶¶ 5–6, ECF No. 67. The individuals were aiding Defendant, who was unable to stand and appeared highly intoxicated. *Id.* ¶ 6. In response, the officers called an ambulance to help Defendant. *Id.*

During the interaction, one of the officers observed a firearm "protruding from the right leg opening of [Defendant's] pants." *Id.* ¶ 7. After handcuffing Defendant, the officers recovered a loaded .22 caliber Smith & Wesson pistol from his pant leg and brass knuckles from his pocket. *Id.*

Defendant was arrested the same day. *Id.* ¶ 8. Upon arrest, Defendant falsely denied possessing the firearm. Add. to PSR at 1, ECF No. 76. It was later discovered the firearm was previously reported stolen and was manufactured outside the State of New York. PSR II ¶ 7.

**D. Arrest, Arraignment, and Additional Violation of Supervised Release**

On December 19, 2024, the Government filed a complaint against Defendant. *See generally* Compl., ECF No. 1. Magistrate Judge Lara K. Eshkenazi issued an arrest warrant the same day. Arrest Warrant, ECF No. 2.

On December 20, 2024, Defendant was arraigned before Magistrate Judge Taryn A. Merkl. Magistrate Judge Merkl ordered Defendant detained. Ord. of Detention, ECF No. 4.

On January 2, 2025, Probation filed the Second VOSR, charging Defendant with new criminal conduct for being a felon in possession of a firearm (Charge Three), in violation of the mandatory condition of supervision prohibiting him from committing "another federal, state or local crime." Second VOSR at 1.

On January 14, 2025, a U.S. Grand Jury returned Indictment II against Defendant charging him with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Indictment II ¶ 1. On January 17, 2025, Defendant was arraigned by Magistrate Judge Peggy Kuo. ECF No. 9. Defendant pled not guilty to the sole count of Indictment II. *Id.*

On April 25, 2025, Defendant moved for his release on bond. ECF No. 18. The Court held a bond hearing on May 23, 2025. On May 30, 2025, this Court denied the motion. ECF No. 24.

On February 19, 2026, Defendant pled guilty to Count One of Indictment II and Charge Three of the Second VOSR. Plea ¶ 1; Indictment II ¶ 1; Second VOSR at 1.

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the Guidelines operate as the "starting point and . . .

initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state, in open court, the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the Court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1).

*1. Family and Personal Background*

Defendant was born on October 29, 1988, in Brooklyn, New York, to his father, Bryant McCaskill and his mother, Sharon Denise McGriff Fields. PSR II ¶ 54.

Defendant experienced a difficult upbringing. Both of Defendant's parents were incarcerated during periods of his childhood. *See id.* At four years of age, Defendant's mother abandoned him in front of a hospital. *Id.* Defendant was then placed into the foster care system for two years, where he was sexually assaulted by his foster father on two separate occasions. *Id.* ¶ 56.

Defendant then went to live with his paternal grandmother, Joanne McCaskill, who provided him a "loving home with all the basic necessities." *Id.* Defendant lived with his grandmother until he was eleven years of age. *Id.* He was then placed in various group homes in Dobbs Ferry, New York, after Defendant was arrested on juvenile assault charges and his grandmother began experiencing medical issues. *Id.*

He returned to live with his grandmother at age fourteen until she passed away in 2006 from lung cancer. *Id.* After her death, Defendant lived with various relatives, ultimately living with his aunt in Brooklyn, New York, until a prior federal arrest. *Id.* Defendant purportedly lived with his father for some unspecified period of time, but was "kicked out after three years due to misbehavior." *Id.* ¶ 57.

Both Defendant's parents are currently in their mid-fifties. *Id.* ¶ 54. Defendant's father resides in Harrisburg, Pennsylvania, and is in good health. *Id.* Defendant reported sharing a close relationship with his father despite not meeting him until he was approximately fourteen years of age due to his father's incarceration. *See id.; but see id.* ¶ 57 (noting Defendant's father stated they met when Defendant was eleven).

Defendant's mother resides in Brooklyn, New York, and suffers from several chronic health conditions. *Id.* ¶ 54. Defendant noted he has not had a close relationship with his mother for most of his life, due to her cocaine use and her choice to abandon him when he was four years old. *Id.* However, in recent years they have reconnected. *Id.* Both of Defendant's parents are aware of the instant case and remain supportive of Defendant. *Id.*

Defendant also has four paternal half-siblings: Shatasia, Rasheem, Cheyanne, and Kaseem. *Id.* ¶ 55. Defendant has never been married and has no children. *Id.* ¶ 58. He has been in a relationship with Zaida Torres Roman—a carrier for the U.S. Postal Service—for approximately two years. *Id.*

2. *Educational and Employment History*

Defendant attended Thomas Jefferson High School in Brooklyn, New York, and completed the eleventh grade. *Id.* ¶ 77. Defendant reported receiving "average grades" and was "suspended once for fighting." *Id.* He was "unable to complete high school because he was arrested in 2008." *Id.*

Defendant has taken most courses in pursuit of his general educational development certificate and some courses in pursuit of his associate's degree, including while incarcerated at the Metropolitan Detention Center, Brooklyn (the "MDC"). Add. to PSR II at 2, ECF No. 76. Defendant obtained a custodian and in-floor covering certification in 2012 and renewed his Occupational Safety and Health Administration certificate in 2022. PSR II ¶ 79.

Prior to 2019, Defendant was unemployed due to his incarceration, and was thus supported by friends, family, and benefits from the Supplemental Nutrition Assistance Program. *Id.* ¶ 85.

From approximately 2018 to 2019, Defendant reported working as a stock clerk at Arlo Warehouse in Brooklyn, New York. *Id.* ¶ 84. He earned approximately $1,700.00 per month in this role. *Id.* In 2019, Defendant worked part-time for DoorDash. *Id.* ¶ 83. From approximately January to September 2024, Defendant worked part-time as a porter for Eagle Deli & Grill, earning approximately $1,300.00 per month. *Id.* ¶ 82. In September 2024, Defendant was also employed seasonally as a packer for the Brooklyn Pretzel Factory for approximately ten days, but reportedly "failed the trial period." *Id.* ¶ 81.

Probation noted Defendant appears unable to pay a fine based on his financial profile. *Id.* ¶ 89.

*3.* *Prior Convictions*

Defendant has an extensive adult criminal history. In July 2007, Defendant was found in possession of a pocketknife and was convicted of misdemeanor disorderly conduct in the Bronx Criminal Court. *Id.* ¶ 24. He was sentenced to one year of conditional discharge. *Id.*

In November 2007, Defendant was arrested and charged with misdemeanor disorderly conduct. *Id.* ¶ 25. He was first sentenced by the Kings County Criminal Court in Brooklyn, New York, to one year of conditional discharge, three days of community service, a drinking driver referral, and issued a one-year order of protection in February 2008. *Id.* However, in April 2009, Defendant was re-sentenced to five days of incarceration. *Id.*

In May 2008, Defendant was arrested and charged with criminal mischief, a Class A misdemeanor, after he threatened a victim with bodily harm while displaying what appeared to be a gun outside the victim's apartment. *Id.* ¶ 26. He also purportedly "banged, kicked, and scratched" the victim's apartment door while loitering and trespassing in the building. *Id.*

Defendant was later sentenced by the Kings County Criminal Court to one year of conditional discharge and was issued a five-year order of protection. *Id.*

In June 2008, Defendant was arrested after violating the previously issued order of protection and threatening to kill the victim from the May 2008 incident. *Id.* ¶ 27. He was charged with criminal contempt in the second degree, a Class A misdemeanor, in the Kings County Criminal Court, and sentenced to six months of incarceration. *Id.* He was again issued a five-year order of protection. *Id.*

In August 2008, Defendant was arrested after committing third-degree robbery, a Class D felony. *Id.* ¶ 28. Defendant and two other individuals approached a victim, displayed a handgun, and stole a phone and earrings. *Id.* Defendant was sentenced by the Kings County Supreme Court to one year of incarceration and issued a one-year order of protection. *Id.*

In two separate instances in July 2009, Defendant was arrested in possession of "seven slabs" and "two decks" of a substance alleged to be heroin. *Id.* ¶¶ 29–30. He received two separate charges of criminal possession of a controlled substance in the seventh degree, a Class A misdemeanor, and was sentenced by the Bronx County Criminal Court and Bronx County Supreme Court to one year of conditional discharge on each charge. *Id.*

In August 2009, Defendant was arrested after being found in possession of a gravity knife. *Id.* ¶ 31. He was charged with fourth degree criminal possession of a weapon, a Class A misdemeanor, and sentenced by the Bronx County Criminal Court to one year of conditional discharge. *Id.*

In September 2009, Defendant was arrested and charged with third degree menacing, a Class B misdemeanor. *Id.* ¶ 32. The Bronx County Criminal Court initially sentenced

Defendant to one year of conditional discharge and nine days of community service but later re-sentenced him to thirty days of incarceration. *Id.*

In February 2010, Defendant was arrested and charged with seventh degree criminal possession of a controlled substance, a Class A misdemeanor. *Id.* ¶ 33. He was later sentenced by the Bronx County Criminal Court to one year of conditional discharge and six months of license suspension. *Id.*

In April 2010, Defendant was arrested after jumping a turnstile to avoid payment of subway fare. *Id.* ¶ 34. He was charged with intent to obtain transportation without paying, a Class A misdemeanor, and sentenced by New York County Criminal Court to time served. *Id.*

In May 2010, Defendant was arrested after attempting to steal money from a victim at a gas station. *Id.* ¶ 35. He was charged with attempted petit larceny, a Class B misdemeanor, and sentenced by Bronx County Supreme Court to one year of incarceration. *Id.*

In January 2011, Defendant was charged with second-degree obstruction of governmental administration, a Class A misdemeanor, after he "threw an unknown liquid onto the face, shirt, and arms of a correctional officer." *Id.* ¶ 36. He was sentenced by the Bronx County Supreme Court to one year of incarceration. *Id.*

In June 2011, Defendant was arrested after he "doubled up with another individual through a subway turnstile to avoid payment of fare." *Id.* ¶ 37. He was charged with intent to obtain transportation without paying, a Class A misdemeanor, and sentenced by Kings County Criminal Court to five days of incarceration. *Id.*

In December 2011, Defendant was arrested after being found with a .22 caliber revolver. *Id.* ¶ 38. He was charged with attempted criminal possession of a weapon, a Class E felony, and sentenced by Bronx County Supreme Court to eighteen months to three years of incarceration.

*Id.* While in custody, Defendant received twenty-six disciplinary infractions spanning disobeying direct orders, threats of violence, drug use, rioting, and harassment. *Id.*

In October 2013, Defendant was found in possession of a weapon during a "pat frisk" at the Bare Hill Correctional Facility in Malone, New York. *Id.* ¶ 39. He was charged with first-degree attempted possession of dangerous contraband in prison, a Class E felony, and sentenced by the Franklin County Court to eighteen months to three years of incarceration. *Id.*

In November 2018, Defendant was arrested after selling two plastic containers of crack cocaine to undercover officers. *Id.* ¶ 40. Defendant was charged with criminal sale of a controlled substance on school grounds, a Class B felony, and sentenced by the New York County Supreme Court to two years of incarceration to be followed by two years of post-release supervision. *Id.*

In July 2021, Defendant was arrested for being a felon in possession of a firearm, a Class C felony. *See supra* Section I(a) (Background). *Id.* ¶ 41. This Court sentenced Defendant to forty-one months of incarceration to be followed by three years of supervised release. *Id.* While in custody, Defendant incurred two infractions for threatening bodily harm and one infraction for drug/alcohol use. *Id.*

In May 2024, Defendant was arrested after being found in possession of eighty-two vials of crack cocaine. *Id.* ¶ 42. He was charged with seventh-degree criminal possession of a controlled substance, a Class A misdemeanor, and sentenced by Kings County Criminal Court to three years of probation. *Id.*

4. *Physical and Mental Health*

Defendant suffers from asthma and uses an inhaler on an as-needed basis. *Id.* ¶ 62. Defendant was also diagnosed with left kidney issues and a possible ulcer or hernia and suffers from back pain. *Id.*

As for Defendant's mental health, as a minor Defendant received limited counseling and was provided medication after experiencing sexual abuse. *Id.* ¶ 63.

While in custody at a group home, Defendant was referred for mental health treatment due to "behavioral problems that included poor judgment, low frustration tolerance, physical aggression, cursing, lying, and two episodes where he ran into traffic." *Id.* ¶ 64. Defendant was diagnosed with fetal alcohol syndrome and severe attention deficit hyperactivity disorder, and was prescribed various medications which were reportedly "unsuccessful" in treating his behavior. *Id.*

Defendant was also referred for mental health treatment while incarcerated after the loss of his grandmother and uncles. *Id.* ¶ 65. Defendant did not report any suicidal ideations. *Id.* Defendant stated he has attempted to ask for mental health services while in custody at the MDC but has not received any assistance. *Id.* ¶ 66. He purportedly copes with his mental health by "fasting, praying, reading, writing letters and speaking to his partner." *Id.*

5. *Substance Abuse*

Defendant reported he first began consuming alcohol at age twenty-nine and drank socially up until the time of his arrest in the instant case. *Id.* ¶ 68.

Defendant first smoked marijuana at age seventeen and reportedly smoked it "a few times per month" because it "helped with his asthma, anxiety and depression." *Id.* ¶ 69. He stated he

last smoked marijuana when he was thirty-six years of age. *Id.* While on supervised release, Defendant submitted drug tests to Probation which returned positive for marijuana use. *Id.*

Defendant reported using heroin "a few times" between his late twenties and early thirties. *Id.* ¶ 70.

Defendant first used both powder and crack cocaine in his late twenties. *Id.* ¶¶ 71–72. He reportedly stopped using crack cocaine in 2022 and last used powder cocaine the month of his arrest in the instant case. *Id.* While on supervised release, Defendant submitted drug tests to Probation which returned positive for cocaine. *Id.* ¶ 71.

In his presentence interview, Defendant "expressed that his substance use has indirectly hurt his loved ones and has affected his health." *Id.* ¶ 73. New York Department of Correction's records indicate Defendant successfully completed an alcohol and substance abuse treatment program while in custody in 2021. *Id.* ¶ 74. Upon release from incarceration, Defendant reportedly plans to begin substance abuse treatment at the Odyssey House. *Id.* ¶ 76.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. As noted by the Government, Defendant's "intoxication, possession of a loaded firearm, and proximity to numerous bystanders created an obvious risk of violence and serious injury." Gov't Sent'g

Mem. at 6. Nor is this the first time; "four of his five felony convictions have involved firearms or other dangerous weapons[.]" *Id.* In short, Defendant's "near-immediate return to criminal activity, despite the Court's supervision and the pendency of prior violation charges, reflects a profound disregard for the conditions of his release and for the law." *Id.* at 7.

The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a)(2).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Plea ¶ 1 (Count One). Defendant faces a maximum term of fifteen years' incarceration and no minimum term. 18 U.S.C. § 924(a)(8). Defendant also faces a maximum term of three years of supervised release. 18 U.S.C. § 3583(b). If a condition of release is violated, Defendant may be sentenced to up to two years of incarceration without credit for pre-release incarceration or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e).

Defendant also pled guilty to violating a mandatory condition of his supervised release. Plea ¶ 1 (Charge Three). Defendant faces a maximum term of two years' incarceration and no minimum term. 18 U.S.C. § 3583(e)(3). The Court also is permitted to "extend a term of supervised release if less than the maximum authorized term was previously imposed, and may

modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2).

In addition to facing terms of incarceration and supervised release, Defendant faces a maximum fine of $250,000.00, 18 U.S.C. § 3571(b)(3), and a mandatory $100.00 special assessment for Count One, 18 U.S.C. § 3013(a)(2)(A).

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

*1. Count One – 25-CR-18*

Pursuant to the U.S. Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G."), the Government and Defendant stipulated to an estimated Total Adjusted Offense Level of 13 in the Plea.[2] *See* Plea ¶ 2.

Probation and the Government agree Defendant has a Criminal History Category of VI. PSR II ¶ 45; Gov't Sent'g Mem. at 4; Plea ¶ 2. Defendant does not specify a Criminal History Category in his sentencing submissions. *See generally* Def.'s Sent'g Mem., ECF No. 70.

All parties appear to agree the applicable Guidelines provision is U.S.S.G. § 2K2.1, which calls for a Base Offense Level of 14 because Defendant was "a prohibited person at the

[2] The parties initially calculated a Subtotal Adjusted Offense Level of 16. *See* Plea ¶ 2. The estimated Total Adjusted Offense Level the parties stipulated to is 13 because the Subtotal Adjusted Offense Level was subject to a two-level reduction "[i]f [Defendant] clearly demonstrate[d] acceptance of responsibility," and a one-level reduction "if [Defendant] . . . accepted responsibility as described" in the Plea, "to the satisfaction of the [Government], and if [he] ple[d] guilty on or before February 28, 2026[.]" *Id.*

time he committed the instant offense."[3] U.S.S.G. § 2K2.1(a)(6); PSR II ¶ 13; Gov't Sent'g Mem. at 4; Def.'s Sent'g Mem. at 21 (referencing enhancement applicable pursuant to U.S.S.G. § 2K2.1); Plea ¶ 2.

The parties agree certain mitigating factors and an enhancement should apply.

As for enhancements, the parties agree Defendant is subject to a two-level enhancement because the firearm was stolen pursuant to U.S.S.G. § 2K2.1(b)(4)(A). PSR II ¶ 14; Gov't Sent'g Mem. at 4; Def.'s Sent'g Mem. at 21 ("The defense does not dispute the application of § 2K2.1(b)(4)(A)."); Plea ¶ 2.

As for mitigating factors, Probation and the Government agree a two-level reduction for the timely acceptance of responsibility is appropriate pursuant to U.S.S.G. § 3E1.1(a). *See* PSR II ¶ 19; Gov't Sent'g Mem. at 4; Plea ¶ 2. Furthermore, Probation and the Government agree an additional one-level reduction is appropriate because Defendant notified the Government of his intent to enter into a plea agreement in a timely manner pursuant to U.S.S.G. § 3E1.1(b). *See* PSR II ¶ 20; Gov't Sent'g Mem. at 4; Plea ¶ 2. Defendant does not directly address either of these mitigating factors in his sentencing submissions. *See generally* Def.'s Sent'g Mem.

Pursuant to the Guidelines Sentencing Table, Probation and the Government agree a Total Adjusted Offense Level of 13 and a Criminal History Category of VI results in a Guidelines

[3] At sentencing, the Government and Defendant reiterated their stipulation to a Base Offense Level of 14. However, the Court highlights U.S.S.G. § 2K2.1(a)(4)(A) provides for a Base Offense Level of 20 if "[Defendant] committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substances offense[.]" U.S.S.G. § 2K(a)(4)(A). Neither the Government, Defendant, or Probation acknowledged the applicability of U.S.S.G. § 2K(a)(4)(A) in their sentencing submission or at the sentencing hearing, notwithstanding Defendant's prior felony conviction for criminal sale of a controlled substance on school grounds. A Base Offense Level of 20 combined with the enhancement and mitigating factors agreed upon by the parties would instead result in a Total Adjusted Offense Level of 19. Pursuant to the Sentencing Guidelines Table, a Total Adjusted Offense Level of 19 and a Criminal History Category of VI results in a Guidelines range of sixty-three (63) to seventy-eight (78) months' incarceration for Count One. U.S.S.G. § 5A. However, given the Government and Defendant's stipulation, the Court instead applies a Base Offense Level of 14.

range of thirty-three (33) to forty-one (41) months' incarceration. U.S.S.G. § 5A; PSR II ¶ 91; Gov't Sent'g Mem. at 4; *see also* Def.'s Sent'g Mem. at 14 ("The Guidelines advise a range of 33 to 41 months' imprisonment for [Defendant's] § 922(g)(1) conviction[.]"). Defendant stipulated to this range in the Plea. Plea ¶ 2. The Guidelines range is subject to a fifteen-year statutory maximum pursuant to 18 U.S.C. § 924(a)(8). *See* Plea ¶ 1.

2. *Charge Three – 21-CR-383*

As for the violation of supervised release in Charge Three, Probation and the Government agree the applicable Guidelines provision is U.S.S.G. § 7B1.4.[4] Second VOSR at 3; Gov't Sent'g Mem. at 4. Probation argues Defendant is charged with a grade "B" violation as defined by U.S.S.G. § 7B1.1(a)(2), which, combined with a criminal history category of VI applicable at the original sentencing, results in a Guidelines range of twenty-one (21) to twenty-seven (27) months' incarceration. Second VOSR at 3; *see also* Mem. and Ord. at 13, 21-CR-383. According to the Government and Probation, 18 U.S.C. § 3583(e)(3) imposes a statutory maximum term of incarceration for a violation of supervised release of two (2) years when the original offense of conviction is a Class C or D felony. *See* Second VOSR at 3; Gov't Sent'g Mem. at 4 (applying 18 U.S.C.§ 3583(b) and (e)(3) to calculation for Charge Three).

Accordingly, all parties agree the applicable Guidelines range is twenty-one (21) to twenty-four (24) months' incarceration. *See* Second VOSR at 3; Gov't Sent'g Mem. at 4; Def.'s Sent'g Mem. at 14. Defendant stipulated to this range in the Plea. Plea ¶ 2.

This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

---

[4] The Government and Probation seem to cite U.S.S.G. § 7B1.4 in error given it only covers terms of probation. The correct Guidelines provision is U.S.S.G. § 7C1.5 which covers terms of supervised release. However, the ultimate calculation remains the same when applying U.S.S.G. § 7C1.5.

**E. Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

All parties rely on Chapter 7 of the Guidelines, which provides policy guidance on violations of probation and supervised release. *See generally* U.S.S.G. Ch. 7; Gov't Sent'g Mem. at 4; Def.'s Sent'g Rec. at 14 (citing Guidelines range for Charge Three); Prob Sent'g Rec. at 3.[5]

This Court appreciates and seriously considered the provisions raised by the parties. Finding no other pertinent policy statements on its own, the Court proceeds to the next § 3553(a) factor.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6).

Defendant requests a below-Guidelines sentence to, in part, avoid sentencing disparities. Def.'s Sent'g Mem at 26. Defendant argues a downward variance is "consistent with federal sentencing practice." *Id.* Specifically, the requested aggregate sentence of thirty-four months "represents a 37% reduction from the combined bottom of the applicable Guidelines ranges for the two offenses to which [Defendant] pleaded guilty. In 2025, 35% of national sentences for convictions under § 922(g) were downward variances, and the average sentence reduction was 35%." *Id.*

[5] As noted above, *supra* n.4, the Government and Probation appear to incorrectly cite to U.S.S.G. § 7B1, which applies to violations of probation. Violations of supervised release are discussed in U.S.S.G. § 7C1.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentencing disparities.

**G. The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in the instant case.

**IV. Conclusion**

For the reasons set forth above, the Court sentences Defendant to thirty-three (33) months' incarceration to be followed by three (3) years of supervised release with both the standard and special conditions of supervision for Count One; twenty-one (21) months' incarceration for Charge Three to run consecutively to Count One; forfeiture of items as identified in the preliminary Order of Forfeiture, issued on February 27, 2026; and a $100.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary, to accomplish the purposes of § 3553(a). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the PSR and addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion. The Court advises Defendant he has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

**SO ORDERED.**

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2026
Brooklyn, New York